IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01440-KLM

SHAUNA STRAZISCAR,

  Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

  Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record**
[#10],[2] filed November 3, 2014, in support of Plaintiff's Complaint [#1] seeking review of the
decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security
Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability
insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the
"Act"). On February 12, 2015, Plaintiff filed an Opening Brief [#15] (the "Brief"). Defendant
filed a Response [#16] (the "Response") in opposition, but no Reply was filed. The Court
has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The

_____

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent Form* [#20]; *Order of Reference*
[#21].

[2]  "[#10]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Order.

Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I.  Factual and Procedural Background

Plaintiff alleges that she became disabled as of June 1, 2008, at the age of thirty due to chronic migraines, nausea, degenerative disc disease, and depression.[3]  Tr. 46.[4]  On January 18, 2012, Plaintiff protectively filed an application for disability insurance benefits under Title II.  Tr.  46.

On June 12, 2012, a hearing was held before an Administrative Law Judge (the "ALJ").  Tr. 32-44.  On March 12, 2013, the ALJ entered his Decision, finding that Plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act . . . ."  Tr. 31.  The ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2008, and that Plaintiff had not engaged in substantial gainful activity since June 1, 2008, the alleged onset date of her disability.  Tr. 19.  The ALJ found that Plaintiff suffers from one severe impairment, i.e., low intelligence quotient ("IQ").  Tr. 19.  However, the ALJ also found that this impairment does not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)."  Tr. 21.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC")

---

[3]  Although these particular impairments were the original reasons provided for Plaintiff's alleged disability, none of them form the basis of this appeal.

[4]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10, 10-1, 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, and 10-8, by the sequential transcript numbers instead of the separate docket numbers.

"to perform a full range of work at all exertional levels.  Such work involved simple, unskilled tasks, with GED levels, as described in the <u>Dictionary of Occupational Titles</u> (DOT), of 1 in Reasoning, 1 in Mathematics, and 1 in Language, with each of these levels being at the lowest measured levels."  Tr. 24-25.  Based on the RFC and the testimony of an impartial vocational expert (the "VE"), the ALJ found that Plaintiff was unable to perform any past relevant work but that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed . . . ."  Tr. 29-30.  Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of farm worker II, industrial cleaner/sweeper, and window washer.  Tr. 30.  He therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 31.

Plaintiff appealed to the Appeals Council, which denied her request for review of the ALJ's decision.  Tr. 1-3, 11.  Therefore, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability."  A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may

have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired,

the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying her disability insurance benefits. Specifically, Plaintiff argues that the ALJ erred in his evaluation of the opinion evidence provided by Brette Valette, Ph.D ("Dr. Valette") and erred by finding that Plaintiff did not meet or equal a medical listing.

**A.      Dr. Valette's Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by according no weight to the one-time assessment of Dr. Valette.[5]  *Brief* [#15] at 11-14; Tr. 27-28.  The ALJ summarized Dr. Valette's opinion as follows:

> As for the opinion evidence, on February 15, 2013, the claimant underwent a consultative, psychological evaluation with Brett Valette, Ph.D.  As part of the evaluation, Dr. Valette administered intelligence testing to the claimant, resulting in low IQ scores.  Dr. Valette noted that, the claimant has mild cognitive impairments in the areas of working memory, processing speed, and perceptual reasoning.  He noted that, this might be lifelong functioning, and would interfere with her ability to use and manipulate information, use and retain information, in problem solving, working with speed and accuracy. He noted that, she would have difficulties "getting the picture," manipulating math equations, and visual processing of information.  Dr. Valette also completed a mental residual functional capacity questionnaire.  In it, he indicated that, in the area of mental abilities and aptitudes needed to do unskilled work, the claimant had no more than a moderate limitation in most abilities.  However, she was "marked seriously limited" in her ability to remember work-like procedures, maintain regular attendance and be punctual within customary, usually strict tolerances, and respond appropriately to usual work situations and to changes in a routine work setting.  She was "marked seriously limited" to "extreme major limitation" in her ability to maintain attention for a two hour segment, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress.  He noted that, these limitations were due to low IQ, learning disability, PTSD, and chronic pain.  In the area of mental abilities and aptitudes needed to do semi-skilled and skilled work, the claimant had a moderate limitation in her ability to set realistic goals or make plans independently of others.  However, she had an "extreme major limitation" in her ability to understand, remember, and carry out complex instructions, and in her ability to deal with stress of semi-skilled or skilled work.  This was due to low IQ, working memory impairment, and mild cognitive impairment.  He noted that, she had no more than a moderate impairment in her ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel to unfamiliar place[s], and use public transportation.

---

[5]  The Court notes that Plaintiff does not argue that the ALJ misevaluated any other physician whose opinion appears in the record.  For example, Plaintiff does not argue that the ALJ erred by according "great weight" to the opinion of Mark Suyeishi, Psy.D.  *See* Tr. 23.

> She only had a mild limitation in expressing personal feelings, and a moderate impairment in performing repetitive or short cycle work, and working alone or apart in physical isolation from others. She was "marked seriously limited" in attaining precise set limits, tolerances, and standards, and working under specific instructions, and had an extreme limitation in directing, controlling, or planning activities of others, influencing people in their opinions, attitudes, and judgments, and performing a variety of work. He failed to note when these limitations applied, but dated the form February 15, 2013.

Tr. 27-28 (internal citations omitted). The ALJ then evaluated Dr. Valette's opinion as

follows:

> The undersigned notes that, Dr. Valette ha[d] no prior or longitudinal treating relationship with the claimant when he completed this assessment. It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. It also appears that, he based his findings on the subjective reporting of symptoms alleged by the claimant, and not supported by the overall record. Of note, the claimant has never sought any mental health treatment, either during the relevant period under review, or since that time. There is no indication in this report that, he reviewed any of the claimant's past medical records but rather relied on her somewhat dubious self-reports. The undersigned also notes that the form Dr. Valette used consists of "check the box" type answers, rather than allowing him to complete it in a narrative manner. His findings are quite conclusory, providing no explanation of the evidence relied on in forming it, and with no accompanying narration to substantiate his conclusory assessment. In fact, his findings contradict his earlier conclusion that, she is not mentally retarded based on her past work history, abilities, and relationships. As previously discussed, the claimant worked for one company, McDonald's for almost a three-year period on a part-time basis. This suggests greater capabilities than he found, particularly in the areas he denoted as having marked or extreme limitations. He also diagnosed her only with a "mild" cognitive impairment, yet noted marked and extreme limitations due to it. The undersigned also notes that, these limitations included other factors, as he noted that, she appeared in physical pain during the interview, and also had diagnoses of major depression and PTSD. He also completed this assessment some 5 years after she last met the insurance requirements for disability, and failed to note for what period his findings were relevant. As

such, for the foregoing reasons, no weight is accorded his assessment. The undersigned finds that, based on his findings that, she has mild cognitive impairments in the areas of working memory, processing speed, and perceptual reasoning, the undersigned finds that, given her low IQ scores, she reasonably should be limited to simple, unskilled work. Such work has GED levels, as described in the DOT, of 1 in each of Reasoning, Mathematics, and Language, with each of these levels being at the lowest measured levels.

Tr. 28 (internal citations omitted).

Plaintiff argues that the ALJ's decision should not have been impacted by the facts that Dr. Valette had no ongoing treating relationship with Plaintiff and that she did not see him for treatment during her one visit. *Brief* [#15] at 11; Tr. 28. Plaintiff provides no legal support for this statement, and the law is to the contrary. The Tenth Circuit has stated that the "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Here, the report provided by Dr. Valette is clearly "based upon limited contact and examination." *Id.*; Tr. 28, 341-49. "Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Frey*, 816 F.2d at 515. Further, like the nontreating physician in *Frey v. Bowen*, Dr. Valette provided no indication that he reviewed any past medical records. *Frey*, 816 F.2d at 515; Tr. 28. Thus, the Court finds no error with this aspect of the ALJ's decision.

Plaintiff also argues that the ALJ incorrectly excluded Dr. Valette's narrative statement from the ALJ's assessment of Dr. Valette's opinion when the ALJ stated that there was "no accompanying narration to substantiate [Dr. Valette's] conclusory assessment." *Brief* [#15] at 13 (citing Tr. 28). Plaintiff misreads the ALJ's statement, however. While Dr. Valette provided a written narration, the ALJ considered it to be a

conclusory assessment which provided no real explanation of the evidence Dr. Valette relied on in reaching his findings. In fact, the majority of the report focuses on impairments and complaints that are not the focus of this appeal. *See* Tr. 341-42. Rather, the problem with Dr. Valette's opinion, as determined by the ALJ, was that his conclusions are unconnected to his assessment and the check-box form or any other evidence at his disposal. Tr. 28, 343. Having examined Dr. Valette's opinion, *see* Tr. 341-49, the Court finds no error with this aspect of the ALJ's decision.

To the extent Plaintiff argues that the ALJ's decision disregarding Dr. Valette's opinion is not supported by substantial evidence, the Court disagrees. *See Brief* [#15] at 13-14. Plaintiff provides limited argument to the contrary but directs the Court's attention to no evidence of record or legal authority in support. *See id.* The ALJ must consider medical opinions in the context of the record as a whole to evaluate their consistency and may reasonably discount opinions that are inconsistent with other medical evidence. 20 C.F.R. § 404.1527(c)(4); *Raymond v. Astrue*, 621 F.3d 1269, 1272, (10th Cir. 2009). When considering the ALJ's evaluation of a physician's opinion, the Court looks to whether the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ has clearly met this standard. *See* Tr. 28.

Accordingly, the Court finds that the ALJ did not commit error with respect to his treatment of Dr. Valette's medical opinions. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support

a conclusion).

## B.     The ALJ's Step Three Analysis

Plaintiff argues that her impairment meets the requirements of Listing 12.05(D).  This

provision states:

> 12.05 Intellectual disability: Intellectual disability refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e., the
> evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements
> in A, B, C, or D are satisfied. . . .  D. A valid verbal, performance, or full scale
> IQ of 60 through 70, resulting in at least two of the following: 1. Marked
> restriction of activities of daily living; or 2. Marked difficulties in maintaining
> social functioning; or 3. Marked difficulties in maintaining concentration,
> persistence, or pace; or 4. Repeated episodes of decompensation, each of
> extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.   Plaintiff asserts that she meets the required

"preamble" portion regarding her IQ level as well as 12.05(D)(2) and 12.05(D)(3).   *Brief*

[#15] at 14-16.

The majority of Plaintiff's argument discusses the ALJ's analysis of her IQ.  *See id.*

However, the sole evidence to which she directs the Court's attention with respect to

12.05(D)(2) and 12.05(D)(3) comes from the check-box form completed by Dr. Valette.

*See id.* (citing Tr. 346).  Plaintiff notes that, with respect to social functioning, Dr. Valette

found moderate limitations in accepting instructions, responding appropriately to criticism

from supervisors, and getting along with co-workers or peers without unduly distracting

them or exhibiting behavioral extremes.   *Id.*   With respect to concentration, persistence,

and pace, Dr. Valette found moderate limitation in the ability to maintain attention for two

hour segments.   *Id.*

Because the ALJ did not commit error with respect to according Dr. Valette's opinion

no weight, Plaintiff may not use Dr. Valette's form as support for her argument here. However, even if the Court were to accept this conclusory evidence, Plaintiff has not explained how the ALJ's thorough analysis of these two factors is legally or factually in error. *See* Tr. 24. The ALJ has provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks omitted).

> In social functioning, the claimant had no more than mild difficulties. As just mentioned, the claimant was working in a retirement care facility in early August 2008, suggesting regular contact with others. Additionally, in 2009, 2010, and 2011, she worked part-time at McDonald's, based on earning records. In a work history report, she indicated that, her job duties at that time involved being a customer service representative, doing cashier duties, preparing food, etc. Given her description, she was interacting regularly with others, including supervisors, co-workers, and the general public without difficulty. The record is devoid of any evidence that, she sought any treatment for having any issues working or being around others. As such, based on the foregoing, the claimant had no more than mild limitation in social functioning through her date last insured.

> With regard to concentration, persistence or pace, the claimant had no more than mild difficulties. As previously noted, the claimant worked in 2009, 2010, and 2011 as a customer service representative for McDonald's, which involved multi-tasking, including taking and getting orders, cashiering, and assisting in food prep. The claimant also maintained a driver's license and drives, including during the period under review. The undersigned notes that, even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. It is certainly not a simple and routine set of functions. The claimant's ability to drive indicates adequate cognitive function. As such, she had no more than a mild limitation in this area through her date last insured.

Tr. 24 (internal citations omitted). Plaintiff has not demonstrated how the scintilla of evidence provided by Dr. Valette with respect to 12.05(D)(2) and 12.05(D)(3) overwhelms the ALJ's decision based on other evidence of record. *See Grogan*, 399 F.3d at 1261-62;

Tr. 24.

Accordingly, the Court finds that the ALJ has not committed error with respect to Step Three of his analysis. *See Glenn*, 21 F.3d at 988.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  September 8, 2015        BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge